BARRY J. PORTMAN
Federal Public Defender
CYNTHIA C. LIE
Assistant Federal Public Defender
160 West Santa Clara Street, Suite 575
San Jose, CA 95113
Telephone: (408) 291-7753

Counsel for Defendant CERVANTES

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 07-00430 RMW |
| Plaintiff, | MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE INDICTMENT |
| vs. | |
| MIGUEL SANTIAGO CERVANTES, | |
| Defendant. | |

**INTRODUCTION**

By indictment filed July 11, 2007, a grand jury charged defendant Miguel Cervantes with one count of illegal reentry, in violation of 8 U.S.C. § 1326. The indictment alleges that Mr. Cervantes was deported from the United States on or about October 15, 2004, and at some point thereafter he was found in the Northern District of California, without the express consent of the Attorney General or the Secretary of the Department of Homeland Security.

The government cannot establish that Mr. Cervantes was previously "deported" within the meaning of 8 U.S.C. § 1326 because the prior deportation proceeding giving rise to the deportation order did not comport with due process, and therefore one element of the charge against him cannot be proved. For that reason, this Court should issue an order dismissing the indictment.

**STATEMENT OF FACTS**

The Alien Registration file provided by the government to the defense as discovery in this case reveals that Mr. Cervantes has been deported from this country only once, on or about October 15, 2004. A careful reading of the documents pertaining to Mr. Cervantes' contacts with the United States Immigration and Customs Enforcement ("ICE") demonstrates that his deportation proceedings were marred by serious due process error, in that Mr. Cervantes was denied his rights to counsel, to contest deportability and to seek relief from deportation, by the INS' failure to advise him of these rights in Spanish, or with the aid of an interpreter. Because of this, Mr. Cervantes' waiver of these rights was not considered and intelligent, and thus the resulting deportation order cannot form the basis for the present prosecution.

On September 27, 2004, ICE issued a Notice of Intent to Issue a Final Administrative Removal Order ("Notice") in Mr. Cervantes's removal proceedings. *See* Notice of Intent, Exhibit A. The two-page form is written exclusively in English, and the Deportation Officer charged with explaining the Notice to Mr. Cervantes apparently made no effort to do so in Spanish, or to use an interpreter to translate either the Notice or the Deportation Officer's English-language explanation of the Notice and the rights and responsibilities detailed therein. On October 4, 2004, Mr. Cervantes signed an acknowledgment of his receipt of the document and, most critically, in the bottom part of the form, he checked off three boxes and signed his name. The three boxes that Mr. Cervantes checked correspond to the following English-language statements:

- "I do not wish to contest and/or request withholding of removal."

- "I admit the allegations and charge in this Notice of Intent. I admit that I am deportable and acknowledge that I am not eligible for any form of relief from removal. I waive my rights to rebut and contest the above charges. I do not wish to request withholding or deferral of removal."

- "I understand that I have the right to remain in the United States for 14 calendar days in order to apply for judicial review. I do not wish this opportunity. I waive this right."

Exhibit A.

1     Further, when he was provided with a form that gave him a *choice* between responding to a question in English or Spanish, Mr. Cervantes elected Spanish, as is apparent in the "Statement by Alien of No Appeal Pending," where Mr. Cervantes signed on the signature line after the text in Spanish, when a corresponding signature space exists on the form following the English text. *See* Statement by Alien of No Appeal Pending, Exhibit B.[1]

    In contrast with this abbreviated English-only removal proceeding, ICE has on other occasions made some effort to accommodate Mr. Cervantes' lack of competence in English. On October 5, 2006, for example, Special Agent Percy Orum did not employ a Spanish language interpreter, but at least presented Mr. Cervantes with a Spanish language form called "Acta de Declaracion Jurada" (Record of Sworn Statement), in which Mr. Cervantes spontaneously responded "[s]i" to the question "Desea usted tener a un abogado o caulquier persona presente para aconsejarle?" ("Do you wish to have a lawyer or any other person present to advise you?")[2]. *See* Acta de Declaracion Jurada, Exhibit C. A line is drawn through the series of questions that follow on the second and third pages of the form, and Mr. Cervantes signed the form and provided his fingerprints. *Id.* The comparison between Exhibits A and C demonstrates that when Mr. Cervantes was presented with a Spanish-language explanation of his rights, as was the case with Exhibit C, he acted to protect them, but when presented with only an English-language advisal of rights, as with Exhibit A, he did not.

    Unfortunately for Mr. Cervantes, the document critical to protection of his most basic rights as an alien in removal proceedings was the very form which presented the advisal and waiver language in English without translation; that is, Exhibit A, the Notice.

---

[1] This statement did not advise Mr. Cervantes of any rights or otherwise mitigate the absence of any Spanish translation of the Notice and boilerplate waiver language.

[2] The discovery provided by the government contains both the Spanish and English versions of the form. *See* English language version of Acta de Declaracion Jurada, Exhibit C. The English version of the form has been left blank.

Memorandum of Points and Authorities in
Support of Motion to Dismiss                         3

**ARGUMENT**

Because the underlying removal order serves as a predicate element of an illegal reentry offense under § 1326, a defendant charged with that offense may collaterally attack the removal order under the due process clause. *See United States v. Mendoza-Lopez*, 481 U.S. 828, 839 (1987). Under 8 U.S.C. § 1326(d), to succeed in a collateral attack, a defendant must show first, that he "exhausted any administrative remedies that may have been available to seek relief against the order;" second, that "the deportation proceedings at which the order was issued improperly deprived [him] of the opportunity for judicial review;" and third, that "the entry of the order was fundamentally unfair." As the discussion below makes clear, Mr. Cervantes either meets or is exempt from meeting the requirements of each of these three prongs.

**I.   Exhaustion of Administrative Remedies**

According to Section 1326(d), to challenge the validity of an underlying deportation order, a defendant must first demonstrate that he "exhausted any administrative remedies that may have been available to seek relief against that order." 8 U.S.C. § 1326(d)(1). The Ninth Circuit has held, however, that an alien who is not informed as to the possible avenues for relief from deportation is not subject to the exhaustion of administrative remedies requirement of 8 U.S.C. § 1326(d)(1). *See United States v. Pallares-Galan*, 359 F.3d 1088, 1096 (9th Cir. 2004) ("Because the IJ erred when she told Pallares that no relief was available, Pallares' failure to exhaust his administrative remedies cannot bar collateral review of his deportation proceeding.").

Similarly, in the present case, where Mr. Cervantes' waivers and admissions in the Notice were not considered and intelligent, the exhaustion requirement does not apply, because the effect of Mr. Cervantes' unknowing waiver was to foreclose access to any avenues of administrative relief. As the Second Circuit explained in *United States v. Sosa*, 387 F.3d 131, 136 (2nd Cir. 2004), "the exhaustion requirement must be excused where an alien's failure to exhaust results from an invalid waiver" because "[o]therwise Section 1326(d) would violate *Mendoza-Lopez* by prohibiting collateral attacks of deportation proceedings that were

fundamentally unfair because they denied the alien an opportunity for judicial review." *See also United States v. Muro-Inclan*, 249 F.3d 1180, 1183 (9th Cir. 2001) (holding that the exhaustion requirement of § 1326 "cannot bar collateral review of a deportation proceeding when the waiver of right to administrative appeal did not comport with due process").

Because Mr. Cervantes' waivers in this case were not considered and intelligent, he is excused from meeting the exhaustion requirement of 8 U.S.C. § 1326(d)(1).

## II. Deprivation of Judicial Review

A defendant undertaking a collateral attack of a deportation order under Section 1326(d) must next show that "the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review." 8 U.S.C. § 1326(d)(2).

Mr. Cervantes meets this requirement because his waiver of appeal or petition for review was not considered and intelligent, given that he signed the untranslated English-language waiver following a similarly untranslated advisal, without the aid of an attorney or an interpreter. As the Ninth Circuit stated in *Pallares-Galan*: "where a waiver of the right to appeal a removal order is not considered and intelligent, an alien has been deprived of his right to that appeal and thus to a meaningful opportunity for judicial review." 359 F.3d at 1096 (quotations omitted). *See also United States v. Lopez-Vasquez*, 1 F.3d 751, 753 (per curiam) ("Although a deportee may waive his right to judicial review of his deportation order, that waiver must be considered and intelligent. Otherwise, the deportee is *deprived of judicial review* in violation of due process.") (emphasis added).

For a waiver to be valid, the government must establish by clear and convincing evidence that the waiver was considered and intelligent. *Pallares-Galan*, 359 F.3d at 1097. The Ninth Circuit in *Lopez-Vasquez* emphasized that courts "should indulge every reasonable presumption against waiver and they should not presume acquiescence in the loss of fundamental rights." 1 F.3d at 754 (quotations omitted). In another case where the defendant's waiver formed the basis for a collateral attack, the court similarly stressed that "[t]he government always has the

obligation to prove an intentional relinquishment or abandonment of a known right or privilege." *United States v. Gonzalez-Mendoza*, 985 F.2d 1014, 1017 (9th Cir. 1993) (quotations omitted).

In *Gonzalez-Mendoza*, the Ninth Circuit concluded that because the defendant's waiver of his right to appeal occurred during a "mass silent waiver," the government had failed to overcome the presumption against waiver, and thus the defendant was denied due process. 985 F.2d at 1017. In that case, the defendant had a deportation hearing before an Immigration Judge, who spoke through an interpreter. *Id.* at 1015. The Ninth Circuit reviewed a similar situation in *Lopez-Vasquez*, and held that government failed to demonstrate that the defendant's silent waiver of the right to appeal at a mass hearing was considered and intelligent, despite the fact that the Immigration Judge on the record gave a lengthy explanation of the right to appeal and gave the aliens a form explaining in Spanish the right to appeal. 1 F.3d at 754. *See also Mendoza-Lopez*, 481 U.S. at 840 (concluding that a due process violation had occurred where the Immigration Judge "permitted waivers of appeal that were not the result of considered judgments by respondents").

In the present case, Mr. Cervantes' waiver is far more suspect than those in *Gonzalez-Mendoza* and *Lopez-Vasquez*, because Mr. Cervantes waived his rights to *any* process at all, including his right to respond to or seek relief from the alleged grounds for removal. *See* Exhibit A. Moreover, Mr. Cervantes made his waivers and concessions without the benefit of an interpreter who could at least translate, if not actually explain, the substance of the English language document. In *United States v. Leon-Leon*, 35 F.3d 1428, 1431 (9th Cir. 1994), the Ninth Circuit held that a the defendant was improperly deprived of his opportunity for judicial review where the Immigration Judge failed to translate key inquiries at the removal hearing.[3] As was the case in *Leon-Leon*, Mr. Cervantes' relinquishment of his rights and his admission of

---

[3] Despite agreeing with the defendant that this failure to translate constituted due process error, the court affirmed the district court's denial of Leon-Leon's collateral challenge on the basis that he failed to show any prejudice. 35 F.3d at 1431.

Memorandum of Points and Authorities in
Support of Motion to Dismiss            6

deportability made without the benefit of Spanish language translation improperly deprived him of the opportunity for judicial review.

Finally, in *Pallares-Galan*, the court concluded that the government had "failed to provide clear and convincing evidence to establish Pallares' intentional relinquishment of the right to appeal, and among the factors it cited in support of that conclusion were that the defendant was not represented by counsel and the fact that he had, during the course of the hearing, displayed "evident desire to vindicate his rights." 359 F.3d at 1097-98 (quotations omitted). Those same factors are present in the instant case: Mr. Cervantes too was not represented by counsel at the time he waived his rights, and, as discussed above, Mr. Cervantes has elsewhere demonstrated an "evident desire to vindicate his rights" when provided accurate information regarding those rights in Spanish. *See* Exhibit B.

The government has failed to show that Mr. Cervantes' total relinquishment of his rights, made in a language he does not speak and without the aid of counsel, was knowing and considered and thus, under controlling Ninth Circuit law, he has met the requirements of § 1326(d)(2), improper deprivation of the opportunity for judicial review.

### III. Fundamentally Unfair

The final requirement for a collateral attack on an underlying deportation in an illegal reentry case is set forth in 8 U.S.C. § 1326(d)(3), which states that an alien in a collateral attack must demonstrate that "the entry of the order was fundamentally unfair." While this statutory phrase does not contain the word "prejudice," courts reviewing certain types of collateral attacks under this provision have read this as requiring a showing of prejudice. *See, e.g.*, *United States v. Camacho-Lopez*, 450 F.3d 928, 930 (9th Cir. 2006); *Pallares-Galan*, 359 F.3d at 1103.

Notably, however, the requirement of prejudice emanates not from the controlling Supreme Court decision on collateral attacks, *Mendoza-Lopez*, but from a decision of the Ninth Circuit, *United States v. Proa-Tovar*, 975 F.2d 592, 594 (9th Cir. 1992) (en banc). The Supreme Court in *Mendoza-Lopez* acknowledged that there exist some procedural errors that are so

Memorandum of Points and Authorities in
Support of Motion to Dismiss                7

1  fundamental "that they may functionally deprive the alien of judicial review, requiring that the
2  result of the hearing in which they took place not be used to support a criminal conviction."
3  Mendoza-Lopez, 481 U.S. at 839 n.17.  Moreover, the language of Section 1326(d), as amended
4  four years after *Proa-Tovar*, mirrors the "fundamental fairness" language of *Mendoza-Lopez*,
5  rather than the actual prejudice standard articulated in *Proa-Tovar*.

6  As the Second Circuit explained in *United States v. Sosa*, a defendant is excused from
7  meeting statutory requirements for collateral attacks set for in § 1326(d) to the extent those
8  requirements conflict with Supreme Court authority as set forth in *Mendoza-Lopez*.  *See Sosa*,
9  387 F.3d at 136 (explaining that courts must read in an exemption to § 1326(d)'s requirement of
10 exhaustion of administrative remedies to the extent that this statutory requirement conflicts with
11 the due process holding of *Mendoza-Lopez*).  Under the logic of *Sosa*, a defendant like Mr.
12 Cervantes who suffered structural error in his deportation proceedings should similarly be
13 excused from meeting a  requirement of actual prejudice because such a requirement, as applied
14 to him, conflicts with the due process clause as interpreted by *Mendoza-Lopez* and Ninth Circuit
15 cases.

16 This is the case not only because, as explained above, *Mendoza-Lopez* imposed no
17 prejudice requirement, but also because Ninth Circuit cases interpreting that landmark opinion in
18 combination the Circuit's *Proa-Tovar* decision have held that no showing of prejudice will be
19 required in cases, such as the present one, where the flaws in the proceeding were so grave as to
20 amount to structural error.  For example, in *United States v. Leon-Leon*, the Ninth Circuit held
21 that an exception to *Proa-Tovar*'s prejudice requirement existed "'when the administrative
22 proceedings were so flawed' that an effective judicial review of a deportation, which might
23 otherwise have been prevented, would be foreclosed."  35 F.3d at 1431 (quoting *Proa-Tovar*, 975
24 F.2d at 595).

25 The limits of the prejudice requirement imposed by *Proa-Tovar* were discussed further by
26 Judge Ferguson in his dissent in the *Leon-Leon* case.  *See* 35 F.3d at 1433-35.  Judge Ferguson

contended in his *Leon-Leon* dissent that the protections of *Fulminante* must apply in the review of administrative proceedings in the context of a collateral attack in a § 1326 case, because in these cases, the government uses the deportation order to prove an element of a criminal defense. *See* 35 F.3d at 1434 n.1. And while Judge Ferguson's opinion did not carry the day in terms of determining the outcome in *Leon-Leon*, neither the panel majority in that case nor subsequent opinions of the court have refuted the central assertion made in his dissent, specifically, that in the case of structural error, where the due process flaws are so grievous that they "affect the very reliability of the proceedings," no showing of prejudice is required. *Id.* at 1435. Indeed, to interpret § 1326(d)(3) as imposing a requirement to the contrary would be to make a rule in contravention of *Mendoza-Lopez*'s due process holding, which, as the Second Circuit made clear in *Sosa*, is not permissible. *See Mendoza-Lopez*, 481 U.S. at 839 n.17 (noting that under *Rose v. Clark*, 478 U.S. 570 (1986), some procedural abuses in the immigration context could operate to "deny effective judicial review of administrative determinations" to the extent that render the proceedings fundamentally unfair); *see also Sosa*, 387 F.3d at 136.[4]

The Ninth Circuit revisited the idea of presumed prejudice in *United States v. Garcia-Martinez*, 228 F.3d 956 (9th Cir. 2000), where the court acknowledged that the *Mendoza-Lopez*

---

[4] In reviewing the validity of a deportation order in a non-criminal context, the Seventh Circuit has held that an alien need not prove prejudice when denied the right to counsel of his or her choice because that right, as granted to aliens by statute and regulations, "is too important and fundamental a right to circumscribed by a harmless error rule." *Castaneda-Delgado v. INS*, 525 F.2d 1295, 1299 (7th Cir. 1975). The Second Circuit and the D.C. Circuit reached similar results in *Montilla v. INS*, 926 F.2d 162, 169 (2nd Cir. 1991) and *Yiu Fong Cheung v. INS*, 418 F.2d 460, 464 (D.C. Cir. 1969). Given that the requirements for a challenge to a deportation order "are less stringent for orders used in non-criminal deportations than for orders used in criminal prosecutions," *Alvarenga-Villalobos v. Ashcroft*, 271 F.3d 1169, 1173 (9th Cir. 2001), these decisions exempting aliens from harmless error review in the civil context provide further support for the proposition that there are limits to the prejudice requirement imposed by *Proa-Tovar*. *See also United States v. Perez*, 330 F.3d 97, 103 (2nd Cir. 2003) (stating the that Supreme Court in *Mendoza-Lopez* "suggested that there is more concern about the validity of a deportation order when it is used as the basis for a criminal conviction than when it is used as the basis for deportation, a civil matter").

and *Leon-Leon* majority opinions included an exception for structural error. 228 F.3d at 963-64. The court in *Garcia-Martinez* declined to find the exception applicable in the case before it, however, because the defendant had conceded his deportability, and that concession was unrelated to the assertion of error, because the defendant in that case had premised his due process argument on the theory that adjudicators in expedited removal proceedings are inherently biased. *Id.* at 964. In the present case, by contrast, Mr. Cervantes' concession of deportability is part and parcel of the due process error he suffered, because he made that concession – as well as the blanket waivers at issue in this case – without the benefit of a translator, in a language he does not speak, and without the aid of counsel. Thus despite the Ninth Circuit's ruling in *Garcia-Martinez*, Mr. Cervantes' concession of deportability cannot operate as a bar to relief, given that it was a product of the very structural error at issue in his case.

Finally, the facts in this case fit within the framework of structural error as defined by the Supreme Court in *Arizona v. Fulminante*, 499 U.S. 279 (1991) and *Rose v. Clark*, *supra*, and analogized by the Court in *Mendoza-Lopez*, 481 U.S. at 839 n.17. In *Fulminante*, the Court explained that when error occurs during the presentation of the case, "and may therefore be quantitatively assessed in the context of other evidence presented," it is subject to the harmless error standard, but where the error affects the very framework in which the trial proceeds, the trial "cannot reliably serve its function as a vehicle for determination of guilt or innocence" and it is thus "fundamentally unfair," such that prejudice is presumed. 499 U.S. 279, 307-08, 310. Examples of structural error include deprivation of the right to counsel, use of a coerced confession, adjudication by a biased judge, and denial of the right to represent onself at trial. *See id.* at 310; *see also Rose v. Clark*, 478 U.S. at 577. The Ninth Circuit has deemed it structural error to permit a written English-language waiver of a constitutional right by a Spanish-speaking defendant who had previously used a Spanish interpreter during the proceedings at issue, "without first conducting a colloquy with [the defendant], through the interpreter, to ensure that the waiver was valid." *United States v. Duarte-Higareda*, 113 F.3d 1000, 1003 (9th Cir. 1997)

1 (automatic reversal of conviction following jury waiver and bench trial).

2  In the present case, Mr. Cervantes experienced a wholesale denial of due process that constitutes structural error. The immigration authorities accepted his blanket waiver and the dispositive concessions that he made in a language he does not speak, and that he entered into without the aid of a translator or a lawyer, and they did this despite his unambiguous request, when subsequently questioned in his native language, that he would like a lawyer to help him and that he did not want to make any admissions. *See* Exhibit C. This deprivation of due process created a result as unreliable as those deemed to be structural error by the Supreme Court in *Fulminante* and *Rose v. Clark*, and by the Ninth Circuit in *Duarte-Higareda*. Notably, the defendant in *Duarte-Higareda* had at least enjoyed the benefit of notice and an opportunity to be heard, notwithstanding the invalid English-language jury waiver, having been arraigned and tried with the assistance of a Spanish interpreter.[5]

That the due process violation occurred in an administrative rather than criminal proceeding is immaterial. *See*, *e.g.*, *United States v. Higareda-Ramirez*, 107 F. Supp .2d 1248, 1255-56 (D. Hawai'i 2000) (finding underlying deportation procedure fundamentally unfair under § 1326(d)(3), and presuming prejudice, because of combination of three factors: lack of interpreter, absence of counsel, and a lack of a transcript or other record of the deportation hearing). "When the government was never put to its proof [in the underlying deportation proceeding], it is fundamentally unfair [in a prosecution under Section 1326] to make a defendant prove a negative and show that he was not deportable." *Id.* at 1252. Minimum requirements for constitutional due process include reasonable notice and an opportunity to be heard. *See*, *e.g.*, *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985); *Goldberg v. Kelly*, 397 U.S. 254 (1970). In the instant case, the failure of ICE to provide a Spanish translation of the Notice and its boilerplate advisal and waiver language deprived Mr. Cervantes of even that bare

---

[5]Even in *Proa-Tovar*, the defendant identified no deficiency in the notice or hearing process, but only in the waiver of his right to a direct appeal from the resulting deportation order.

minimum of constitutional protection. Because of this, Mr. Cervantes' waiver is not subject to a harmless error or prejudice standard, and thus, under *Mendoza-Lopez*, he is excused from proving that he was prejudiced by the fundamental unfairness. *See Sosa*, 387 F.3d at 136.

## CONCLUSION

Because the government cannot establish by clear and convincing evidence that Mr. Cervantes' relinquishment of his rights was considered and intelligent, and because the structural nature of this error relieves him from any requirement of proving prejudice, the defense submits that this Court should issue an order dismissing the indictment with prejudice.

Dated: September 28, 2007

                                                  Respectfully submitted,

                                                  BARRY J. PORTMAN
                                                  Federal Public Defender

                                                  CYNTHIA C. LIE
                                                  Assistant Federal Public Defender